[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The complaint is brought in two counts. The first count alleges that the defendant acting as the "representative payee" for [his father] Charles Alaimo, received social security payments on behalf of Charles Alaimo which should have been turned over to the plaintiff (Vencor) pursuant to a determination by the state of Connecticut department of social services (DSS) that he was eligible for state benefits to cover a portion of his stay at Vencor, with the balance to come from his social security income. There is no dispute that the defendant did not make payment to Vencor (nor did anyone else) on Charles Alaimo's behalf. The plaintiff alleges a constructive trust was created and violated by the defendant.
The second count alleges the defendant's non-payment to Vencor was an unlawful conversion.
When the case came to trial, the parties agreed to a stipulation of certain facts and exhibits. No witnesses were called and the issues were briefed by the parties.
The stipulated facts are as follows: CT Page 6458
Vencor is a company which runs a nursing home known as Parkway Pavilion. Charles Alaimo became a resident of that facility in May 1998, and later became eligible for state medical assistance.
At the time he entered the nursing home, his wife was living in a jointly owned premises (the joint owners being Charles and his wife) at 10-16 New Street, Enfield, Connecticut. This is a multi-family dwelling and at the time it had an active mortgage with the Webster Bank in the approximate amount of $120,000 with monthly payments due.
The plaintiff's claim is for the difference between the medicaid payments by the state of Connecticut to Vencor on behalf of Charles Alaimo and the allowable billing amount. The amount of the claim is $10,052.87 (subject to verification) and that sum has not been paid to Vencor.
Prior to entering the nursing home, Charles had duly authorized the defendant with power of attorney on January 30, 1998. (Exhibit J.) The defendant collected, on Charles' behalf, rent from tenants in the property and his monthly social security checks. During that period of time, he (defendant) paid the mortgage, property insurance, real estate taxes and maintenance of the property. Charles Alaimo's wife died in January, 1999. The pecuniary loss to Vencor occurred prior to April 2000. After that date, social security payments were made directly to Vencor for the full amount of the allowable billing.
Other facts will be discussed as needed to clarify this decision.
There is no dispute that the defendant had an obligation to pay the DSS determined amount of "applied income" to Vencor if funds were available.
He completed the application for assistance on behalf of his father (Exhibit H) and signed as having power of attorney (POA). In completing the application, he stated he lived on the premises and paid nothing for room or board (but did indicate he shared expenses and indicated the rental unit income was "about $1100 per month"). (Exhibit I.)
On May 8, 1998, the defendant signed, as POA, a resident admission agreement which, in part, contains the following language:
 Nursing Center may not require a third party guarantor of payment ("Responsible Party") to sign the admission agreement as a condition of admission or continued stay. However Center may require any individual who has legal access to Resident's income or resources available to pay for Resident's care ("Agent") to sign the admission agreement, without incurring personally CT Page 6459 financial liability, to agree to provide payment to Nursing Center from Resident's income or resources. Nursing Center will inform Resident, verbally and in writing at the time of admission, of the Resident's rights during his or her stay in Center, in a language that Resident understands, and will notify Resident of any changes made to these rights.
(Exhibit G.)
The state assistance commenced in September 1998, and from that time the defendant should have paid the difference between the state payment and the allowable billing amount (that amount was $159.25 per month initially, but was increased upon his wife's death) out of the resident's available income.
While the defendant, as his father's representative, was responsible for payment of the "applied income" to Vencor, he was also responsible for other expenses incurred for the benefit of his father's estate. The parties stipulated that he paid the mortgage, property insurance, real estate taxes and insurance. There was no evidence or stipulation that he expended any of his father's income for his own personal gain.
The plaintiff argues that the Vencor had a priority interest in the social security payments. (The complaint is specifically limited to social security income.)
The plaintiff's argument that a constructive trust arose in its favor is not appropriate to the facts of this case. A constructive trust requires an interest by a grantor to benefit a third person, the transfer of property to another who stands in a confidential relationship to the grantor with the intent that the transferee will transfer the property to the third person, and the unjust enrichment of the transferee if the transferee is allowed to keep the property. Gulack v. Gulack,30 Conn. App. 305, 310, 620 A.2d 181 (1993). Under the stipulated facts in this case, the defendant was not unjustly enriched. The income was used to pay costs associated with the real estate. Nor do the facts prove fraud, actual or constructive, nor duress, abuse of confidence, commission of wrong or unconscionable conduct, artifice, concealment, or questionable means. Nor do the facts prove that the defendant acted against equity or obtained or held property which he ought not, in equity and good conscience, hold and enjoy. See Zack v. Guzauskas, 171 Conn. 98,103, 368 A.2d 193 (1976).
The social security payments, by stipulation, went to maintaining the property owned by Charles Alaimo, a property in which the defendant has no CT Page 6460 interest.
The plaintiff has not alleged facts showing the defendant had converted any property owned by it. It had no property right in the social security checks issued to Charles Alaimo. Conversion is the unauthorized assumption and exercise of ownership over property belonging to another.VanDerlip v. VanDerlip, 149 Conn. 285, 288, 179 A.2d 619 (1962). The social security checks were not property belonging to the plaintiff.
The regulations of the state provide that the state (DSS) make a determination of the amount it will pay a nursing home for the care of a beneficiary and the amount the beneficiary is expected to pay called "applied income". The nursing home is responsible for collecting the "applied income". Regs., Conn. State Agencies § 17b-262-708 (a).
It is also noted that the defendant did not act in the capacity of a conservator. In the application prepared by him, he indicated he was acting as POA (Power of Attorney). (Exhibits H-I.) In the resident admission agreement, he did not sign on the line shown as Conservator, Legal Guardian or Legal Representative, but as "POA".
The approval letter from DSS was directed to Charles J. Alaimo (not to the defendant, Dominic Alaimo).
There is no documentation in the file to indicate Dominic was designated as Charles' representative payee by the Social Security Administration. The evidence is that he was acting in the capacity of a power of attorney, which is a distinct capacity.
While the plaintiff may well have a cause of action in pursuing a claim of unpaid "applied income" against, for example, the beneficiary, it has not established the allegations in the first count of a constructive trust, or a conversion as alleged in the second count.
Therefore, under the unique stipulated facts of this case, judgment should enter for the defendant and it is so ordered.
Klaczak, J.